599 So.2d 922 (1992)
LITIGATION REPROGRAPHICS AND SUPPORT SERVICES, INC.
v.
Ernesto SCOTT, Leroy Raymond, and Ronald Raymond.
No. 92-CA-0274.
Court of Appeal of Louisiana, Fourth Circuit.
May 28, 1992.
Judy Y. Barrasso, Alex J. Peragine, David K. Hall, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, for plaintiff-appellant Litigation Reprographics and Support Services, Inc.
Al J. Mendoza, Mendoza & Hardin, Harvey, for defendants-appellees Ernesto Scott, Leroy Raymond, and Ronald Raymond.
Before BARRY, KLEES and PLOTKIN, JJ.
KLEES, Judge.
Plaintiff, Litigation Reprographics and Support Services, Inc. (hereinafter "LRSS") appeals the district court's denial of its request for a preliminary injunction enjoining defendants, Ernesto Scott, Leroy Raymond and Ronald Raymond, from operating a business in competition with that of LRSS, their former employer. We find that plaintiff is entitled to the preliminary injunction, and therefore reverse.
LRSS provides litigation support services to attorneys, primarily by organizing, identifying and copying documents, and also performs on-site review, copying and dissemination of medical records for hospitals. Its principal place of business is in Orleans Parish. All three defendants are former employees of LRSS, Ernesto Scott as a business manager and Leroy and Ronald Raymond as sales representatives. Each defendant signed a non-competition agreement whereby he agreed that, upon leaving LRSS, he would not operate a competitive business in parishes where LRSS does business or solicit clients of LRSS for two years. Ernesto Scott was hired by LRSS on February 11, 1991 and voluntarily left its employ on May 14, 1991. Subsequent to his leaving, Robert Wurtzel, the president of LRSS, heard that Leroy Raymond, who had been working for LRSS since its inception in October of 1989, and Ronald Raymond, who had been hired in June of 1990, were planning to leave LRSS and start a competing business with Ernesto Scott. For this reason, Leroy and Ronald Raymond were terminated on June 21, 1991.
One month later, the three defendants incorporated Crescent City Reproductions, Inc., of which each defendant is an officer, director and one-third owner. Crescent City provides similar services to LRSS and is being operated in Orleans Parish and Jefferson Parish in direct competition with *923 LRSS. Some of Crescent City's clients were formerly clients of LRSS.
On August 9, 1991, LRSS filed a petition for injunctive relief and damages based on L.S.A.-R.S. 23:921, which specifically authorizes certain non-competition agreements and provides that the obligee (employer) is entitled to injunctive relief upon proof of the obligor's (former employee's) failure to comply with the agreement, without the necessity of proving irreparable injury. On October 12, 1991, LRSS filed its Rule for Preliminary Injunction, which was heard by the trial judge on the basis of affidavits, deposition testimony, memoranda, verified pleadings and oral arguments. On November 5, 1991, the trial court denied the injunction, finding the non-competition agreements unenforceable because "the defendants were forced by economic duress to enter into the agreements at issue."
LRSS applied for supervisory writs to this Court. On January 17, 1992, we granted the writ application holding that the trial court had "erred in finding that employees, under these circumstances, who sign a non-competition agreement as a condition of employment or continued employment, do so under economic duress." We further found that the agreements in question "were drafted in conformity with La.R.S. 23:921, as amended by Act No. 639 (effective September 3, 1989) which expressly changed the law to authorize certain noncompetition and nonsolicitation agreements," and finally that defendants had failed to show the existence of any extrinsic factors which would constitute duress.
Defendants applied for supervisory writs to the Louisiana Supreme Court, which granted the application on the basis that we had made a procedural error by reviewing the merits of the case rather than granting writs and setting the case for appellate review. Accordingly, the Supreme Court reinstated the judgment of the trial court and remanded the case to this court for full review.
The facts have not changed. Full review of the record confirms our original finding that the non-competition agreements signed by defendants are valid and enforceable.
All three agreements were signed after the effective date of the 1989 amendment to R.S. 23:921, which now reads, in pertinent part:
C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.
Defendants' primary argument on appeal is that their consent to these agreements was vitiated by duress because the signing of the agreements was made a condition of their employment. This argument ignores the plain meaning of R.S. 23:921 and contravenes the obvious intent of the legislature in changing the law in 1989. To establish duress, defendants must show more than merely that their continued employment was conditioned upon their signing of the non-competition agreements. Defendants were "at will" employees, who could be terminated by LRSS at any time for any reason. Therefore LRSS's threat to terminate them, which it had a legal right to do, did not constitute duress. See La.Civ.Code art. 1962. Moreover, there is absolutely no evidence in the record that defendants were subjected to any true form of duress, such as threats of physical harm or other harassment. The only evidence offered in support of defendants' theory of "economic duress" was their own affidavits stating that their families depended on their incomes from LRSS. Defendants did not claim or attempt to show that they were unable to find work elsewhere.
None of the defendants denies that he signed the agreement. They also admit that they were operating a business similar to that of LRSS in direct competition with *924 it and that some of their clients were former clients of LRSS, although they deny having solicited these clients.
One defendant, Ronald Raymond, argues that his agreement is not enforceable because it recites a date of "March ____, 1990" (the blank was not filled in), and he did not become an employee of LRSS until June of 1990. We reject this argument. The statute does not require that a non-competition agreement be dated or even be written to be valid. It merely states that an "employee" may make such an agreement with his "employer." In this instance, although the date is unclear, Ronald Raymond signed on the line clearly designated as "employee." He cannot now claim that he did not sign in the capacity of employee. Therefore we find his agreement to be valid.
Accordingly, for the reasons given, we reverse the judgment of the district court and issue a preliminary injunction against the further operation by defendants of any business competitive with that of plaintiff and against the solicitation by defendants of any present or former clients of plaintiff, both for a period of two years from the date of the termination of defendants' employment with plaintiff.
REVERSED AND RENDERED.